BERNARDINO NEGRÓN VILLAVICENCIO, Petitioner and Appellant, *v.* VÍCTOR M. GARCÍA, WARDEN OF THE DISTRICT JAIL OF SAN JUAN, Respondent and Appellee.

No. AP-64-28. Decided March 26, 1965.

*Manuel Reyes Serrano* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

█ The following is a synthesis of the testimony of the attorney who defended petitioner when he was found guilty of carrying weapons and breach of the peace: "Generally, when a district judge asks an attorney to take a case and defend it in court, they always say, and Rolando always says it [he refers to Judge Rolando Martínez], take all the time you need. Really, I do not remember what happened in this case, but my practice is to ask whether defendant can pay attorney's fees. Aside from that I always ask whether he has witnesses and I investigate what happened and I tell him to testify before me as if he were in the presence of the judge. . . . My practice has always been to prepare the case in its entirety and especially to come to court prepared"; that in that case he prepared the case as he always does; that he cross-examined the witnesses for the prosecution, for otherwise, "one would be acting ridiculously"; that in that case he did it because he was a judge for quite a long time and I have experience and I know that it must be done; that he does not remember whether petitioner told him that he had additional witnesses: "I do not remember anything because a year has passed. One cannot remember. One has so many cases in the district court. In this case I do not remember. Maybe I have a vague idea, but I do not remember."

On cross-examination by petitioner's attorney, he added: That he does not remember the details of the case although he has a vague idea; that the only *record* of the case is in his mind because it is not the practice to have it in writing nor take notes, "it is seldom done. In these cases when one enters the courtroom with the witness and the defendant, one already knows what one is going to do"; that in the case involving the question of legal aid he was designated by the court; that in such cases (when designated by the Court) different angles are investigated and the attorney who is testifying comes into Court prepared, because

the judge says "take all the time you need"; that in the case under investigation he did not remember what had happened because: "One has so many cases!, but as to preparing the case, it has always been my practice to come prepared to the courtroom. I examine the policeman, the defendant, sometimes I do not call him to testify because it is not convenient for defendant"; that the cases (designated by the court) "are simple cases. One takes account of the situation and prepares the witness"; that sometimes there is no witness (aside from defendant's testimony, of course); that he could not tell how long it took him to prepare the case with the defendant, that it depends on the circumstances "but those simple cases take only about ten minutes. Because of one's experience one realizes what they are going to ask and how one should act in the courtroom"; that as to whether or not defendant (petitioner herein) had a witness, he does not remember or he did not have any, "that is so remote"; that sometimes they say they do and sometimes they do not (as to whether they have witnesses) but in this particular case he does not remember.

On examination by the judge who presided at the hearing he testified that he had been 30 years in the practice of his profession; that there is no possibility, in the case on review specifically, that the deponent attorney went to trial, on behalf of defendant, without even asking what the case involved "since it is the practice of the judge to give us the time we deem necessary to prepare the evidence and I cannot take the case without preparing the evidence"; that if he had not felt prepared, he would not have appeared since, "when one needs more time, one explains it to the judge and requests additional time to prepare the case." "I go to court prepared when I am designated to defend a case."

We are indebted to the attorney designated by the court to represent the petitioner at the trial where he was found guilty of the offense of carrying weapons and breach of the

peace, for a rather exact description of the painful routine by which our courts dispose of one of the most effective constitutional rights a man has to survive in a democracy. It is necessary to understand the moral limitation which a penal antecedent can work on an honest man in order to realize the risk that represents the routine of a pro forma trial.

The case becomes even more distressing when the testimony offered by petitioner at the hearing of the habeas corpus is examined. Petitioner testified that he had another attorney, but that on the day of the trial the latter did not appear and then the judge who presided the trial in the cases of carrying weapons and breach of the peace told him that the court would designate another attorney; that after the attorney was designated by the court they passed to an adjacent room and the attorney asked the petitioner, then defendant, if he had any money; that the petitioner answered no, because he had retained an attorney; that there was a 4 or 5 minutes recess and the petitioner also told the attorney designated by the court that if it were possible, the petitioner would take a little more time to see if he could send for the money; that "it could not be done and the 4 or 5 minutes of recess were up and we entered the courtroom"; that the petitioner did not have time to explain to the attorney designated by the court how the facts occurred; that the attorney asked him whether he had witnesses and he answered he had one, but he did not request his attorney to summon him; that in the courtroom only the policeman and the petitioner testified.

On cross-examination by the prosecuting attorney, the petitioner added that he had learned of the date of the trial about a month prior to the hearing; that petitioner talked to his former attorney about two weeks prior to the hearing; that on that date he had not paid him yet although

"we had talked it over, it was a family matter, no money was involved"; that when the attorney was designated by the court the details of the case were not explained to said attorney because "he gave me no time: After we left the office we came to the trial"; that he did not explain to the judge (the details of the case?) because the petitioner knew that "the case had been previously postponed 5 or 6 times," sometimes because the policeman did not appear, and there was contempt, and twice because the petitioner did not appear; once he sent a doctor's certificate because he was sick, and the next time he did not go because "he was afraid. I arrived at the court and the trial was continued to 2:00 p.m. Then at 2:00 p.m. I did not go"; that his former attorney, in relation to petitioner's case, went two or three times, and that while petitioner was present he went twice; that at the time of the hearing his witness lived on Manuel Henríquez Street in Palo Seco; that he did not request the court to summon him because "there were too many persons and I was afraid"; that he did not request the attorney designated by the court to move for the postponement of the hearing in order to summon the witness; that his attorney did not cross-examine the policeman; that he does not remember whether the judge asked any questions to the policeman because it was so long ago. . . . Such is the most important evidence of the case.

 The petitioner had retained the services of the former attorney to assist him at the trial. He notified him two weeks prior to the hearing, but the former attorney did not appear on the day of the hearing of the case. It seems the practice is to designate an attorney in all cases where the attorney retained by defendant does not appear. We do not believe this is the best practice. The best practice would be to require the attorney retained by defendant to offer the satisfactory professional services expected from him, accord-

ing to the ethics of our profession, if necessary making use of the coercive power of the court to attain justice.

█ What constitutes adequate legal aid is an analysis of the circumstances of the case, rather than the application of certain instrumental rules on the minimum prejudice or service. It is unquestionable that in this case, the picture of defenselessness offends the most rudimentary concept one may have of the equal protection of the laws.

The judgment will be reversed and a new trial will be held with adequate legal aid and with the protection the courts are bound to offer a defendant for his proper defense.